IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

BOBBI O.,                                   )
                                            )
       Plaintiff,                      )
                                            )
v.                                          )  Case No. 19-CV-009-JFJ
                                            )
ANDREW M. SAUL,                             )
Commissioner, Social Security Administration, )
                                            )
       Defendant.                      )

## OPINION AND ORDER

Plaintiff Bobbi O. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**    **Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted).  The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).  The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 53-year-old female, applied for Title II benefits on December 15, 2015, alleging an amended disability onset date of August 25, 2015.  R. 172-175, 193.  Plaintiff claimed that she was unable to work due to disorders including depression, migraines, hip neuropathy, insomnia, spinal bifida occulta, sciatica, and femoral anteversion.  R. 279.  Plaintiff's claim for benefits was denied initially on April 28, 2016, and on reconsideration on August 19, 2016.  R. 93-97; 101-103.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on January 17, 2018.  R. 37-60.  The ALJ issued a decision on February 27, 2018, denying benefits and finding Plaintiff not disabled because she was able to perform other work existing in significant numbers in the national economy.  R. 12-31.  The Appeals Council denied review, and Plaintiff appealed.  R. 1-5; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2019, and that she had not engaged in substantial gainful activity since her amended alleged onset date of August 25, 2015.  R. 17.  The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, mild osteoarthritis of the knees, depression, and

2

anxiety. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. R. 18-19. Prior to making a step-four finding and after "careful consideration of the entire record," the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(c) except:
>
> [Plaintiff] can lift 50 pounds occasionally and 25 pounds frequently. She can stand and/or walk for at least 6 hours in an 8-hour workday. [Plaintiff] can sit for at least 6 hours in an 8-hour workday. She can perform semi-skilled work with no more than occasional public contact.

R. 20. The ALJ found that Plaintiff was unable to perform any past relevant work. R. 30. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work, such as Janitor, and Laundry Worker. R. 30-31. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 31. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III. Issues

Plaintiff raises two issues on appeal: (1) the ALJ failed to properly consider the opinions of two treating physicians, Muzaffar Hussain, M.D.,[1] and Richard H. Tidwell, M.D.,[2] and engaged in improper picking and choosing of records to support the weight assigned to each; and (2) the ALJ failed to properly consider Plaintiff's subjective complaints. ECF No. 13. For the reasons explained below, the Court reverses the decision based on the first allegation of error and does not reach the other alleged error.

---

[1] Dr. Hussain was an orthopedic specialist to whom Dr. Tidwell referred Plaintiff.

[2] Dr. Tidwell was Plaintiff's treating physician from October 2015 to November 2017.

3

**IV. ALJ Erred by Failing to Give Legitimate Reasons for Rejecting Treating Physicians' Opinions Regarding Plaintiff's Physical and Mental Limitations**

Plaintiff argues that the ALJ erred by failing to give good, legitimate reasons for his rejection of: (1) the opinion of Dr. Hussain regarding Plaintiff's need for a prescription walker;[3] and (2) the opinion of Dr. Tidwell regarding Plaintiff's physical and mental limitations and need for a handicap placard.[4] For reasons explained below, the Court agrees and finds reversal warranted.

**A. Legal Standards**

Generally, the ALJ should give more weight to medical opinions from a claimant's treating sources. 20 C.F.R. § 404.1527(c)(2); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) (stating that "opinions of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim") (quoting *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983)) (quotation marks omitted). Indeed, the ALJ must give an opinion from a treating source controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *Id. See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

If the ALJ does not give a treating source's medical opinion controlling weight, the ALJ will consider six factors to determine the weight to give the opinion: (1) the examining

---

[3] The ALJ treated the prescription as a medical opinion, and Plaintiff raises this treatment as a point of error. Therefore, the Court will address the ALJ's treatment of it accordingly.

[4] Plaintiff also discussed the "staleness" of the agency reviewers' opinions, because such "opinions only cited to evidence generated in the beginning of 2016." ECF No. 13 at 10. Although this is correct and casts further doubt on the ALJ's overall opinion weight, the Court's reversal is based specifically on analytical errors in the ALJ's treatment of the treating physicians' opinions.

4

relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must always give "good reasons" for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2). If the ALJ rejects the opinion, he must give "specific, legitimate reasons" for his assessment, based on an evaluation of all the regulatory factors. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quotation omitted). Although the ALJ's decision "need not include an *explicit* discussion of each factor," the record must reflect that the ALJ considered every relevant factor in the weight calculation. *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). The question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

In every case, an ALJ must generally "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Generally, it is "improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

### B. Treating Physicians' Opinions and ALJ's Reasons for Rejecting Opinions

#### 1. Dr. Hussain's Opinion

On May 27, 2016, Dr. Hussain wrote a prescription for a walker with a seat. R. 475-476,

5

489. In discounting Dr. Hussain's opinion that Plaintiff needed the prescription, the ALJ stated:

> Muzaffar Hussain, M.D., filled out a script for a walker miscellaneous with a seat for [Plaintiff]. The form is not dated but it was submitted on July 15, 2016 (Exhibit 19F).[5] The undersigned considered Dr. Hussain's opinion [Plaintiff] needed a walker and accorded his opinion no weight. Her MRI cervical spine and lumbar spine showed only minimal disc disease without significant neuroforaminal stenosis. MRI knee joint showed evidence of mild osteoarthritis (Exhibit 27F/1-4). In addition, she did not require surgery on her neck, back, or right knee based on the MRI findings (Exhibit 17F/2-16). Finally, the records indicate he felt the claimant needed a walker to ambulate due to generalized pain in her knee joints back and neck (Exhibit 17F/2-16).

R. 25 (footnote added).

### 2. Dr. Tidwell Opinions

On November 14, 2017, Dr. Tidwell completed two medical source statements and a handicap parking placard application, which set forth his opinions of Plaintiff's ability to perform specific work-related activities. R. 527, 528, 595. In these assessments, Dr. Tidwell opined that Plaintiff could stand and/or walk less than two hours during an eight-hour workday, lift and/or carry a maximum of ten pounds, and stated that Plaintiff was "severely limited in her ability to walk due to an arthritic, neurological, or orthopedic condition." R. 527-528. Dr. Tidwell noted Plaintiff's severe back pain, use of a walker, and need to frequently change position as further support for his opinions. R. 527. Dr. Tidwell further opined that Plaintiff's limitations in her ability to understand and remember detailed instructions, and her ability to maintain attention and concentration for extended periods to perform detailed tasks "will vary from moderate to marked depending on her level of pain, [and] the medications she has taken that day," but that Plaintiff's ability to interact appropriately with the public was not significantly limited. R. 595.

---

[5] The ALJ's prescription date is in error. The walker prescription was faxed into the SSA office on July 15, 2016. R. 490. However, a review of Dr. Hussain's treatment records shows that Dr. Hussain wrote the walker prescription during Plaintiff's May 27, 2016, office visit. R. 476-476.

The ALJ gave the following reasons for discounting Dr. Tidwell's handicap parking placard application:

> The undersigned considered Dr. Tidwell's handicap placard application. However, little weight is allotted. He only stated she was severely limited with her ability due to arthritic, neurological, or orthopedic condition. First, it does not specify any specific limitation to support his findings. In addition, he did not provide any specific vocational limitations and just started [sic] "severely limited." It would be inconsistent with other evidence showing that even though it [sic] was "severely limited" with her ability to walk, she could climb gates (Exhibit 26F/13-62). Finally, his opinion is inconsistent with his other opinions. He opined her condition did not affect her ability to safely operate a motor vehicle. Yet, he also submitted an opinion that pain and the medications [sic] limit her ability to maintain attention and concentration throughout the day (Exhibit 28F). This appears to conflict his other opinions so overall given little to no weight.

R. 26. In discounting Dr. Tidwell's physical exertion opinion, the ALJ stated:

> The undersigned accords little weight to Dr. Tidwell's opinion. First, it was completed on poorly fabricated attorney supplied form instead of using a readily available SSA form that would have provided for a much better analysis of [Plaintiff's] actual abilities. Second, it is not consistent with his examination on that day. On November 14, 2017, his examination only found she had lumbosacral tenderness, which would not support such severe limitations (Exhibit 23F/1-28). He found she had to use a walker, but as discussed, there was not any indication in her record to support she had to have that to ambulate and in fact is [sic] appears it was prescribed based on her self-reported complaints of pain (Exhibit 17F/2-16). His opinion is not consistent with her testing. The MRI of her cervical and lumbar spine showed her cervical spine had no acute central canal stenosis (Exhibit 22F/2-6). Her MRI of her lumbar spine revealed no acute findings and mild degenerative changes of the lower lumbar spine (Exhibit 22F/2-6). [Plaintiff's] MRI of her right knee showed mild joint effusion and grade II chondromalacia patella (Exhibit 22F/2-6). Finally, his severe limitations are not consistent with other examinations in the record. [Plaintiff] had a normal motor examination and peripheral pulses were palpable, bilateral upper and lower extremity joints were normal to inspection with no masses or defects, her upper and lower extremity joints were normal to palpation except back and hips (Exhibit 27F/1-4). [Plaintiff's] bilateral upper and lower extremity joints range of movements preserved except hips, her bilateral upper and lower extremities joints stable to exam, and upper and lower extremities had normal muscle tone and strength (Exhibit 27F/1-4).

R. 26-27. Finally, in discounting Dr. Tidwell's mental limitation opinions, the ALJ stated:

> The undersigned accords little, if any weight at all to Dr. Tidwell's [mental] opinion. First, it was completed on poorly fabricated attorney supplied form instead

7

of using a readily available SSA approved form that would have provided for a much better analysis of the claimant's actual abilities. Second, it is not consistent with the claimant's own testimony, which draws into question the quality of the examination of the claimant. Specifically, he opined the claimant would not be significantly limited with her ability to interact appropriately with the public. However, the claimant testified if the grocery store was crowded, she panicked. Fourth, there are not any records that indicate the claimant would need the pain medication she was given other than her own reports. She was using a walker but the claimant's activities do not support that was required as evidenced by her complaints of hip pain when she was climbing a gate (Exhibit 26F/13-62). Finally, his treatment records are inconsistent with his own opinion. Even though he opined the claimant's pain and medications would limit her ability to remember detailed instructions and maintain attention and concentration throughout the day, his examination showed she was alert, oriented times three, memory intact, and she had normal affect (Exhibit 23F/1-28). Furthermore, when he completed her handicap placard, he stated her impairment would not limit her ability to operate a motor vehicle (Exhibit 25F). There is not a consistent complaint of pain medications causing her inability to function. Finally, even though he alleged she could not remember or concentrate, she reported she had hand pain but had been crocheting a lot. She took aspirin for the hand pain (Exhibit 23F/1-28). Her being able to focus to crochet would not be consistent with his extreme mental limitations and her reports of taking Aspirin for hand pain would not be consistent with her allegations of having to take such strong pain medication that she could perform [sic] mental work activities. Her record fails to support his severe limitations.

R. 27.

### C. Analysis

Although the ALJ gave lengthy and specific reasons for discounting Dr. Hussain's and Dr. Tidwell's opinions, the undersigned concludes the ALJ failed to give "legitimate" and "good" reasons for doing so. 20 C.F.R. § 404.1527(c)(2).

#### 1. Dr. Hussain

The ALJ's reasons for rejecting Dr. Hussain's opinion – which are limited to discussion of the MRI results, lack of surgery, and that "there was not any indication in her record to support she had to have [the walker] to ambulate and in fact is [sic] appears it was prescribed based on her self-reported complaints of pain" – are not legitimate or supported by the record. Following is a summary of Plaintiff's treatment records from visits with Dr. Hussain. Plaintiff received regular

8

care at Integris Health and Jay Family Medicine from both Dr. Hussain and Dr. Tidwell from November 3, 2015, through November 14, 2017, and treatment was ongoing. R. 415-428, 430-439, 442-447, 473-485, 489, 492, 493-498, 499-526, 529-590, 591-594. Plaintiff presented to Dr. Hussain May 20, 2016, with complaints of chronic neck, shoulder, bilateral knee, low back, and bilateral hip pain. R. 477. Dr. Hussain performed x-rays and diagnosed lumbar pain; joint pain, knee; primary osteoarthritis of both knees; patellar tendonitis, right; lumbar degenerative disc disease; degeneration of cervical intervertebral disc; cervicalgia; trochanteric bursitis; and medial meniscus tear. R. 479-480. Dr. Hussain ordered MRIs for further evaluation and management of Plaintiff's cervical and lumbar spines. R. 480.

After undergoing several MRI tests earlier the same day, Plaintiff visited Dr. Hussain on May 27, 2016. R. 481-485. Dr. Hussain reviewed Plaintiff's MRI results and performed an examination. His treatment notes show that Plaintiff "requires a walker to ambulate due to generalized pain in her knee joints, back and neck. Prescription written for walker." R. 476. Upon physical examination during this visit, Dr. Hussain noted "painful and limited" lumbar spine movements, tenderness over Plaintiff's cervical spine with multiple trigger points over cervical paravertebral muscles, and positive impingement signs in each shoulder with moderately painful and limited movement bilaterally. Examination of Plaintiff's knees showed mild to moderate joint effusion with tenderness over medial joint lines, and bilateral patella femoral crepitus with bilaterally moderately painful and limited knee movement. Dr. Hussain administered a Depo Medrol injection to Plaintiff's left knee. R. 475-476. In sum, Plaintiff's treating physician reviewed recent x-rays, reviewed an MRI from that date, examined Plaintiff, administered an injection for pain, and then prescribed the walker, rather than relying solely on Plaintiff's subjective complaints of pain.

Further, Plaintiff returned to Dr. Hussain on October 12, 2016, again with complaints low back pain, bilateral hip pain, neck pain, shoulder pain, and bilateral knee pain. R. 591-594. Dr. Hussain found many tender and painful points over Plaintiff's lumbar spine and straight leg raising tests were positive. Deep tendon reflexes were diminished at Plaintiff's ankles without motor weakness or atrophy, and examination of Plaintiff's hips showed tenderness and swelling bilaterally with painful and limited movement. R. 593.

Although the ALJ discussed some of the above-described treatment records in his decision, he never identified them as records from Dr. Hussain. R. 24-25. Most importantly, in discussing opinion weight, the ALJ failed to link any of these medical records of Dr. Hussain to his discussion and rejection of Dr. Hussain's opinion. R. 25. He ignored x-rays and clinical examinations, both of which showed more than mild physical limitations. He cited an incorrect date for the relevant MRI, ignoring that it was performed the same day as the prescription. *See supra*, n.5. He further ignored that the prescription was consistent with subsequent observations by Dr. Tidwell that Plaintiff had an unsteady and antalgic gait and advised Plaintiff to continue using the walker. R. 574. Instead, the ALJ relied on his own interpretation of Plaintiff's MRI results to discount Dr. Hussain's opinion and ignored other objective medical evidence supporting the need for the prescription. The ALJ's reasons are not legitimate and reflect only selective portions of the record. Further, the ALJ essentially substituted his own lay opinion regarding the MRI results for that of a medical professional. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (ALJ's finding that claimant did not require assistive device an improper substitution of his own medical opinion for that of treating physician).

### 2. Dr. Tidwell

Similarly, the ALJ's reasons for giving Dr. Tidwell's opinions little weight are not legitimate or supported by the evidence. Plaintiff visited Dr. Tidwell several times between October 27, 2015, and November 14, 2017, with consistent complaints of back pain, neck pain, hip pain, shoulder pain, knee pain, depression, and other issues. R. 415-428, 430-439, 442-447, 492, 493-498, 499-526, 529-590. Dr. Tidwell consistently noted depression, as well as pain in Plaintiff's back, hips, shoulders, and knees, and he consistently prescribed muscle relaxers, anti-depressant medications, and prescription pain medications. *Id.* Dr. Tidwell noted on several occasions that Plaintiff walked with a limp or an unsteady gait and noted Plaintiff's use of a walker. *See, e.g.,* R. 502, 526, 547, 548, 549, 554, 559, 563, 568, 574, 579.

Again, although the ALJ discussed records of Plaintiff's visits to "Jay Family Medicine," he did not indicate that Dr. Tidwell was Plaintiff's treating physician or link Dr. Tidwell's treatment records to a longitudinal relationship with Plaintiff that would support Dr. Tidwell's opinions. Instead, in his opinion weight, the ALJ twice found fault that Dr. Tidwell's opinion was completed on an attorney-supplied form. The Court finds this reason to be of little assistance in understanding the ALJ's reasoning. The ALJ further noted the November 14, 2017, opinion was inconsistent with his examination of that day which "only found lumbosacral tenderness." R. 26. However, Dr. Tidwell's treatment notes from November 14, 2017, actually show that Plaintiff "has dramatic tenderness over the entire spine, most severe in the lumbar area with mild paraspinal spasms." R. 502. It appears the ALJ simply stopped at the heading of "Spine Exam: Lumbosacral Tenderness" and failed to read the next line, or the remainder of the assessment and plan which showed inadequate pain control, with prescriptions of opioid analgesics and muscle relaxers. *Id.*

The ALJ also focused on Plaintiff's subjective reports to further discount Dr. Tidwell's opinions. The ALJ claimed that Plaintiff was not as limited as Dr. Tidwell opined because: (1) it was "not consistent with the claimant's own testimony, which draws into question the quality of the examination of the claimant" (R. 27); (2) she could "climb gates" (R. 26, 27); (3) she retained an ability to crochet and only took aspirin for the associated hand pain (R. 27); and (4) the record did not indicate that Plaintiff needed any pain medication or a walker (R. 27). Inexplicably, the ALJ focused on one record, dated November 8, 2016, one year before Dr. Tidwell's opinions, wherein Plaintiff related to Dr. Tidwell that she "slipped in a hole" and fell "trying to climb over a gate" to discredit Plaintiff's entire two year medical history with Dr. Tidwell. R. 26, 27, 581. The ALJ also focused on one record dated October 26, 2017, wherein Plaintiff complained of hand pain to Dr. Tidwell because she had "been crocheting a lot lately," and noticed the pain getting progressively worse. R. 504. Plaintiff reported sleeping with hand braces and taking aspiring for the pain. *Id.* The ALJ used this as evidence that Plaintiff was able to maintain concentration and focus well beyond the "extreme mental limitations" opined by her treating physician. R. 27. Yet, after using these examples to discredit her treating physicians' opinions, the ALJ next stated the record as a whole did not support Plaintiff's allegations. R. 28. After careful review of the ALJ's reasons for rejecting Dr. Tidwell's opinions, the Court finds those reasons are not supported by the record as a whole and are hyper-focused on largely irrelevant accounts of Plaintiff's own complaints and activities, rather than any contradicting medical evidence.

### 3. Harmful Error

The Court further concludes the ALJ's error is not harmless. Harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way. *Allen*

*v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any harmless-error determination "rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action." *Id.* Here, Dr. Tidwell's opinions regarding Plaintiff's mental and physical limitations, and Dr. Hussain's prescription of a walker, reflect limitations well beyond those considered in the RFC, which permits standing and/or walking six hours in an eight-hour day and completing semi-skilled work. Accordingly, the Court cannot conclude a reasonable factfinder would reach a different conclusion if these physicians' opinions were given a greater weight.

V. **Conclusion**

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly consider the relevant opinions from Plaintiff's treating physicians, Dr. Hussain and Dr. Tidwell, and any other opinion evidence as necessary, and provide legitimate reasons for the weight given to each opinion.

**SO ORDERED** this 5th day of March, 2020.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**